**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

August 22, 2013

LETTER TO COUNSEL:

> RE:  *Alicia Young v. Commissioner, Social Security Administration*;
> Civil No. SAG-12-3075

Dear Counsel:

On October 18, 2012, the Plaintiff, Alicia Young, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits.[1]  (ECF No. 1).  I have considered the parties' cross-motions for summary judgment, and Ms. Young's reply.  (ECF Nos. 14, 16, 19).  I find that no hearing is necessary.  Local Rule 105.6 (D. Md. 2011).  This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3);  *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds).  I will deny both motions, vacate the Commissioner's denial of benefits, and remand this matter for further proceedings consistent with this opinion.  This letter explains my rationale.

Ms. Young filed her claim for benefits on December 11, 2007, claiming disability beginning on May 14, 2007.  (Tr. 112-14).  Her claim was denied initially on March 19, 2008, and on reconsideration on August 19, 2008.  (Tr. 63-67, 70-71).  Following a hearing, an Administrative Law Judge ("ALJ") denied benefits on August 10, 2009.  (Tr. 6-60).  Ms. Young appealed, and this Court remanded the case for further consideration.  (Tr. 465-72).  A second hearing was held on June 7, 2012.  (Tr. 473-92).  On August 13, 2012, the ALJ issued another opinion again denying benefits.  (Tr. 454-64).  The Appeals Council denied Ms. Young's request for review, (Tr. 465-69), so the ALJ's 2012 decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Young suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, obesity, gastroesophageal reflux disease, and hiatal hernia status post surgical repair.  (Tr. 458).  Despite these impairments, the ALJ determined that Ms. Young retained the residual functional capacity ("RFC") to perform the full range of light

---

[1] Ms. Young also originally filed a claim for Supplemental Security Income, which she withdrew on November 13, 2008.  (Tr. 115).

work as defined in 20 CFR 404.1567(b). (Tr. 462). Based on Medical-Vocational Rule 202.21, the ALJ determined that Ms. Young was not disabled during the relevant time frame. (Tr. 464).

On appeal, Ms. Young makes three primary arguments: (1) that the ALJ erroneously relied on the Medical-Vocational Rules despite the existence of non-exertional impairments; (2) that the ALJ erred in assigning weight to various medical sources; and (3) that the ALJ erred at Step Two by failing to designate Ms. Young's depression and toxic nervosa/biotoxin to be severe impairments. I find that the ALJ provided an inadequate RFC analysis, specifically in terms of the credibility determination and consideration of Ms. Young's non-exertional impairments, including her alleged pain and her "status post effects of toxic nervosa[,]" (Tr. 458). For those reasons, remand is appropriate. In so determining, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Young is not entitled to benefits is correct or incorrect.

First, Ms. Young contends that the ALJ erred by relying upon the Medical-Vocational Guidelines, rather than obtaining VE testimony. As a general matter, the Fourth Circuit has ruled that where a claimant "demonstrates the presence of nonexertional impairments," the Commissioner must use expert vocational testimony, rather than relying on the Medical-Vocational Guidelines. *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir. 1983). However, over time the broad language of *Grant v. Schweiker* has been read somewhat more narrowly. As set forth by this Court in *Mackall v. Astrue:*

> [t]he mere presence of nonexertional impairments does not, *per se,* preclude application of the Medical-Vocational Guidelines, as nonexertional limitations rise to the level of nonexertional impairments and preclude the use of the Guidelines only when the limitations are significant enough to prevent a wide range of gainful activity at the designated level. Not every non-exertional impairment precludes reliance on the grids.

No. 1:08–cv–03312–PWG, 2010 WL 3895345, at *1 (D. Md. Sept. 30, 2010) (citations omitted). In this case, the ALJ did not assign Ms. Young any nonexertional impairments in her RFC. Ms. Young counters that she in fact suffered from several such impairments, including debilitating pain, mental health limitations, and the need to avoid exposure to hazardous chemicals and other environmental conditions. With respect to the alleged mental health issues, Ms. Young's argument lacks merit. The ALJ engaged in an appropriate application of the special technique for consideration of mental impairments. (Tr. 460-61). In that analysis, the ALJ cited the evidence of record to determine that Ms. Young in fact had no limitation in any of the relevant functional areas. *Id.* Even assuming that in fact Ms. Young suffered a mild limitation in one or more of the relevant areas, the evidence cited by the ALJ, including Ms. Young's activities of daily living and the reports from two consultative examinations, support the ALJ's finding that no RFC restrictions were required.

However, the ALJ did not adequately address, in the RFC analysis, Ms. Young's allegations of pain or any effects she suffered from her determined impairment of "status post

effects of toxic nervosa." (Tr. 458). The ALJ made a boilerplate finding that Ms. Young's statements concerning her pain "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 462). While the circular language of that conclusion can occasionally be acceptable where the opinion contains sufficient explanation of the reasons for the adverse credibility finding, this case does not meet that standard. The ALJ simply notes that Ms. Young had no abnormalities of the spine or limitations of functioning "other than the back and neck pain." (Tr. 462). He provided no reason for discounting her reports of severe back and neck pain, which alone can cause limitations in functioning in some cases. Further explanation is therefore necessary to determine whether Ms. Young's back or neck pain constituted a non-exertional impairment that might preclude reliance on the Medical-Vocational Guidelines.

Similarly, the ALJ acknowledged that Ms. Young suffered from the non-severe impairment of "status post effects of toxic nervosa." (Tr. 458). However, the RFC analysis contained no consideration of whether any environmental restrictions would be appropriate to address that condition. An ALJ is supposed to consider all impairments, both severe and non-severe, through the sequential evaluation process. *See* 20 C.F.R. § 404.1523. The Commissioner argues that any error is harmless because most environmental limitations, such as those barring exposure to concentrated irritants, pollutants, odors, do not significantly erode the occupational base of light work. *See* SSR 85-15, 1985 WL 56857, at *8. However, on remand, it would be appropriate for the ALJ to consider whether or not environmental restrictions are warranted in the RFC, even if that conclusion does not impact the ultimate outcome of the case.

In the RFC analysis, the ALJ made no express assignments of weight to the opinion evidence from the various medical sources. The ALJ discussed the treating and examining sources, particularly during his detailed and extensive Step Two analysis. (Tr. 458-61). However, express assignments of weight are also required to permit this Court to determine whether the conclusion rests on substantial evidence. *See* 20 C.F.R. § 416.927(e)(2)(ii), (requiring the ALJ to "explain in the decision the weight given to ... any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration])." On remand, the ALJ should discuss his assignment of weight to each source, particularly to the opinions of Ms. Young's treating chiropractor, Colleen Pietrowski, D.C.,[2] and to the non-examining state agency physicians.

Finally, Ms. Young alleges that the ALJ erred at Step Two by failing to classify her depression and toxic nervosa/biotoxin impairments as severe. Pl. Mot. 21-22. The claimant need only make a threshold showing at Step Two that an "impairment or combination of

---

[2] While Dr. Pietrowski is a chiropractor and considered an "other source" under SSR 06-03p, 2006 WL 2329939, she submitted extensive treatment notes and performed a number of diagnostic tests in addition to opining as to the extent of Ms. Young's impairments. While her opinion cannot establish the existence of a medically determinable impairment, those records "may provide insight into the severity of the impairment(s) and how it affect [Ms. Young's] ability to function." *Id.* at *2.

impairments . . . significantly limits [his or her] physical or mental ability to do basic work activities" for the ALJ to move onto the subsequent steps in the five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(c). The claimant bears the burden of proving that her impairment is severe. *Johnson v. Astrue,* Civil Action No. PWG–10–3139, 2012 WL 203397, at *2 (D.Md. Jan. 23, 2012) (citing *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995)). In this case, the ALJ appropriately considered both impairments at Step Two, and provided substantial evidence supporting his conclusions that neither impairment was severe. (Tr. 458-61). As noted above, the problem in the ALJ's opinion is not a Step Two issue, but the failure to provide sufficient analysis to evidence consideration of all of Ms. Young's impairments, both severe and non-severe, at the RFC stage of the sequential analysis.

For the reasons set forth herein, Ms. Young's motion for summary judgment (ECF No. 14) and Defendant's motion for summary judgment (ECF No. 16) will be DENIED. The ALJ's opinion will be VACATED and the case will be REMANDED for further proceedings. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge